IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ADRIAN GERMAN VASQUEZ,

Defendant.

4:16CR3135

**FINDINGS, RECOMMENDATION, AND ORDER**

Defendant Vasquez has moved to suppress evidence found during the traffic stop of his vehicle and the statements he made following his arrest on August 9, 2016. ([Filing No. 37](#)). As to the Fourth Amendment issues, the undersigned magistrate judge finds the motion should be denied for the reasons stated on the record at the close of the suppression hearing.

Vasquez claims is post-arrest statements were obtained in violation of his Fifth Amendment rights. ([Filing No. 37](#)). After considering the evidence and the parties' arguments, the court finds the motion to suppress should be denied in its entirety.

STATEMENT OF FACTS

Based on the hearing testimony, and the audio and video evidence, the court finds the following facts are credible.

In the early hours of August 9, 2016, Defendant Vasquez was arrested after 19 bundles of suspected methamphetamine were found in Vasquez's vehicle during a traffic stop. Vasquez was transported to the Lincoln office of the Nebraska State Patrol ("NSP") where he was placed in an interrogation room at around 2:20 a.m. The officers

handcuffed Vasquez's hands behind his back, and the handcuffs were attached by a 3-5 foot chain to a 5-gallon bucket filled with concrete. Vasquez was then left alone in the room. Each half hour, an officer checked on Vasquez to see if he needed water or was doing alright. (See Exh. 2 at 2:58, 3:32, 3:55, & 4:08). At least once an officer stopped in the room to adjust the handcuffs and/or help Vasquez change positions. (Exh. 2 at 3:32 & 3:55).

Around 4:37 a.m., Investigator Arney entered the room to begin questioning Vasquez. Arney removed the right handcuff and adjusted the left-side handcuff so that Vasquez's left hand was cuffed in the front. Arney gave Vasquez a cup of water, introduced himself, and advised Vasquez of his Miranda rights. Vasquez initialed each right and signed the Miranda waiver form.

A short while later, Arney requested consent to search Vasquez's phone. Vasquez hesitated, stating he thought he had already provided consent, and asked Arney what would happen if he refused. Arney explained what would happen, but told Vasquez that it was ultimately his choice. (Exh. 3 at 4:47–49). Vasquez consented to the search of his phone and signed a consent form.

Around 4:50 a.m., another officer opened the door to the interview room and asked Vasquez several pointed questions. Vasquez defiantly responded to the officer's questions and probing. When the officer left the room, Vasquez turned back to Investigator Arney and jokingly asked whether they were trying to pull a "good cop/bad cop" scenario on him. (Exh. 3 at 4:52).

Vasquez then asked Arney how long it would take to receive a lawyer if he decided to ask for one. (Exh. 3 at 4:49:40 & 4:52:45).[1] Arney responded by stating he would likely not get a lawyer until later that day at the earliest. There was a short pause in the conversation and when Vasquez did not say anything further, Arney began asking additional questions. A few minutes later, Vasquez asked whether this interview would be conducted in front of his lawyer if he were to get a "court appointed lawyer." (Exh. 3 at 4:57). Arney responded that it would. Vasquez then stated that he was tired and he did not know what else to say. Arney paused the interview and left the room.

Arney returned around 15 minutes later. He began asking Vasquez pointed questions regarding the contents of his phone. Vasquez generally stated that he did not know the answers and then informed Arney that he wanted to answer the questions with a lawyer present. Investigator Arney ended the interview. (Exh. 3 at 5:19:55).

## ANALYSIS

Vasquez seeks to suppress statements he made after his arrest on August 9. 2016. Under Miranda v. Arizona, 384 U.S. 436 (1966), law enforcement officers are required to warn a suspect of his constitutional rights to counsel and against self-incrimination prior to initiating custodial interrogation.

There is no dispute that Investigator Arney provided Vasquez with his Miranda rights. However, Vasquez asserts that he invoked his right to counsel several times during the interview and Arney ignored his invocation.

---

[1] When Vasquez first asked this question, the interview was interrupted by the other officer entering the room. Once the officer left the room, Vasquez repeated the question and Arney responded.

3

To invoke Miranda's protection, "[a] 'suspect must unambiguously request counsel'" if the suspect does not "'articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney . . . [the law] does not require that the officers stop questioning the suspect.'" Dormire v. Wilkinson, 249 F.3d 801, 804–05 (8th Cir. 2001)(quoting Davis v. United States, 512 U.S. 452, 457, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994)). An officer is not required to stop his interrogation whenever a suspect says the words "lawyer" or "attorney." See Davis, 512 U.S. at 459. While it may be "good police practice" to clarify whether a suspect wants an attorney present after an ambiguous reference is made, such conduct is not required by Miranda. Davis, 512 U.S. at 461–62.

While Vasquez asked Arney about a lawyer during the interview, his questions were aimed at understanding the benefits of receiving a lawyer: Vasquez asked how soon he would receive a lawyer if he requested one, and whether the same questions would be asked with a lawyer present. Vasquez did not make an unambiguous request for counsel until 5:20 a.m., when he stated he wanted to answer the questions with an attorney present. Thereafter, Investigator Arney immediately ended the interview. The court finds Vasquez's right to counsel was not violated.

Vasquez additionally argues that his statements were the product of an overborne will and were not voluntary. To be admissible under the Fifth Amendment, a statement of the defendant must be voluntary. Bell v. Norris, 586 F.3d 624, 630 (8th Cir. 2009) The determination of whether a defendant has voluntarily waived his Miranda rights is "an extremely fact sensitive analysis." United States v. Nguyen, 608 F.3d 368, 374 (8th Cir. 2010) (citing United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999)). The test for voluntariness is whether, "in light of the totality of circumstances, pressures exerted upon the suspect have overborn his will." United States v. Jorgensen, 871 F.2d 725, 729

(1989)(quoting Haynes v. Washington, 373 U.S. 503, 513–14 (1963)). Factors the court should examine include the details of the interrogation including tactics used by the officer, and characteristics of the defendant. United States v. Wilson, 787 F.2d 375, 381 (8th Cir. 1986). "[T]wo key factors . . . are the conduct of the law enforcement officials and the capacity of the suspect to resist the pressure to confess." United States v. Klime, 99 F.3d 870, 879–80 (8th Cir. 1996).

Prior to the interview, Vasquez was handcuffed with his hands behind his back and chained to two buckets filled with cement for around two hours. Officers checked on Vasquez, periodically asking whether he was alright. Investigator Arney entered the room and began the interview at 4:37 a.m.

Although Vasquez claims he was having an anxiety attack prior to questioning, when Investigator Arney began the interview, Vasquez was calm and collected. He thanked Arney for removing the handcuffs and took a drink of water. After Arney provided Vasquez his Miranda rights, he initialed and signed the waiver form. When Arney sought consent to search the cell phone, Vasquez hesitated and asked questions. Vasquez additionally asked Investigator Arney several questions about his right to counsel throughout the interview and eventually invoked that right ending the interview. Investigator Arney was not coercive through the interview and he fully answered Vasquez's questions.

Vasquez is an adult male. He has experience with the legal system and including previous drug offenses. Though the Court does not condone the manner in which Vasquez was confined prior to his questioning, Vasquez's calm, hesitant, and inquisitive behavior weighs heavily against finding that his will was overborne by such confinement. Vasquez retained his ability to resist pressures to confess. This was especially evident when Vasquez denied having any knowledge when asked more forceful questions by another officer. (See Exh. 3 at 4:50).

Accordingly, the court finds that Vasquez's statements were voluntarily made and were not the product of an overborne will.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 37) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on April 24, 2017 or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

Dated this 30th day of March, 2017.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge